In re PAULIS.

(District Court, D. Connecticut. February 13, 1906.)

No. 1,546. .

1. FRAUDULENT CONVEYANCES—CONSTITUTIONAL LAW—POLICE POWERS—EXTENT—SALES IN BULK—REGULATION.

It is within the police power of the Legislature to adopt reasonable measures for the regulation of sales of merchandise in bulk, so as to prevent fraud.

2. CONSTITUTIONAL LAW—PROPERTY RIGHTS—DEPRIVATION—DUE PROCESS OF LAW.

Conn. Pub. Acts 1905, p. 408, c. 211, provides that, when any retail merchant shall at a single transaction sell the whole or a large part of his stock in trade, such sale shall be void as against creditors, unless he shall at least 7, and not more than 30, days before such sale file in a town clerk's office a notice of his intention to make the same, describing in general terms the property to be sold, the conditions of the sale, and the parties thereto. *Held*, that such act was a reasonable exercise of the state's police power, and was not unconstitutional as a deprivation of property rights without due process of law.

In Bankruptcy. On petition for review.

The following is the opinion of Referee Banks, referred to in the opinion of the court:

This is a petition by Hanft & Co., of the city of New York, alleging, in substance, that on September 13, 1905, petitioners purchased in good faith certain merchandise of the bankrupt herein, paying him therefor $1,300 and taking possession of the same; that thereafter said merchandise was taken from their possession by an officer under a writ of attachment in a suit against said Paulis, and later came into possession of the trustee herein by virtue of these bankruptcy proceedings; and praying that the trustee be ordered to surrender possession to the petitioners. I find the facts to be as alleged in the petition. The only question remaining is that raised by the demurrer to the trustee's answer. The answer alleges that the alleged sale was made .without the formalities required by chapter 211, p. 408, of the Public Acts of this state of .1905, and the demurrer raises the question of the constitutionality of that act.

This statute provides in substance that, when any retail merchant shall at a single transaction sell the whole or a large part of his stock in trade, such sale shall be void as against creditors, unless he shall at least 7, and not more than 30, days before such sale file in the town clerk's office a notice of his intention to make such sale describing in general terms the property to be sold, the conditions of the sale, and the parties thereto. It is conceded that no such notice was filed in this case, and that, if the statute is constitutional, the demurrer should be overruled and the petition dismissed. It is not claimed that the statute is in violation of the state Constitution, but that it is repugnant to the rule of the federal Constitution that no citizen shall be deprived of "life, liberty or property," or be denied the "equal protection of the laws."

Two considerations present themselves to the referee upon the threshold of this discussion. The first is the strong presumption which exists in favor of the constitutionality of all legislative acts. While in a proper case the authority of the court to declare a law unconstitutional is unquestioned, it should be exercised with great care and only when the case is practically free from doubt. This consideration should, perhaps, have special weight when addressed to a court of inferior jurisdiction, and in this case the referee approaches with diffidence the task which is thrust upon him. The second is the well-established rule that in the interpretation and construction of state statutes the federal courts will adopt the construction, if any, already

placed upon the statute by the highest court of the state. A statute restricting sales in bulk was first passed in this state in 1901 (chapter 161, p. 1356, Pub. Acts 1901), as amended became section 4868 of the Revision of 1902, was again amended by chapter 72, p. 49, Pub. Acts 1903, and as now in force appears in Pub. Acts 1905, p. 408, c. 211. The original act and that of the Revision of 1902 provided that the sale should be void, unless it was in writing and recorded in the town clerk's office within one day after the sale was made. The present act requires a notice of intention to sell to be recorded at least seven days prior to the sale. In Walp v. Mooar, 76 Conn. 515, 57 Atl. 277, the Supreme Court of this state held that the act of 1902 was not unconstitutional either as applying only to a particular class or as to depriving such persons of their property without due process of law. The court said: "The purpose of the act is to prevent fraud, and it is of the same general character as our law requiring assignments of future earnings and conditional sales to be recorded. It in no way interferes with the conduct of any retail business in the usual manner. It applies only to sales not made in the ordinary course of business, and imposes no unreasonable burden upon the parties to sales of that character. The Legislature has the undoubted power to adopt reasonable measures for regulating the sale of merchandise in this state so as to prevent fraud, and we think the act under consideration is clearly within that power."

It must be conceded, therefore, that acting under its police power, the Legislature is authorized to adopt reasonable measures for regulating the sale of merchandise so as to prevent fraud, and that the act of 1902 was such a measure. The only question remaining is whether the present act is an unreasonable restriction upon a person's right to dispose of his property, and in discussing that question it must be borne in mind that if "the act has a fair, just and reasonable relation to the general welfare," it may so regulate "the conduct of an individual and the use of property" as to "interfere to some extent with the freedom of the one and the enjoyment of the other." Wright v. Hart (N. Y.) 14 Am. Bankr. R. 584, 75 N. E. 404. Statutes regulating the sale of goods in bulk have been enacted in 23 states and by Congress for the District of Columbia. It has been said that this indicates the extent of the evil, and the necessity of legislation to suppress it, while, on the other hand, Judge Werner, in Wright v. Hart (N. Y.) 14 Am. Bankr. R. 565, 75 N. E. 409, calls. attention to the fact that "statutes that are passed pro bono publico rarely sweep the country with such irresistible momentum, while much fantastic legislation has resulted from organized crusades upon Legislatures by the advocates and supporters of special classes." Though the extent of the legislation upon this subject may not, therefore, furnish any sound argument either for or against its constitutionality, it does supply a large number of statutes for comparison with the act under investigation and a number of decisions in which their constitutionality has been considered.

Statutes regulating sales in bulk have been declared unconstitutional by the courts of New York, Ohio, and Utah. In each of these states the statute requires (1) that seller and purchaser should make, at least five (in Ohio six) days before the sale, a full and detailed inventory showing quantity and cost price of each article, (2) full explicit inquiry of the seller by the purchaser as to name and place of residence of every creditor and the amount owing him, (3) at least five days' notice by the purchaser personally or by registered mail to each creditor of the proposed sale, and of cost price and sales price of the property to be sold. The New York and Ohio statutes require, in addition, that the inventory should be retained by the purchaser for at least six months. The Ohio and Utah statutes make a failure to comply with the terms of the statute a misdemeanor punishable by fine or imprisonment. In each case the sale, if not made in accordance with the requirements of the act, is declared fraudulent and void. The drastic nature of these statutes is clearly pointed out in the opinions in Wright v. Hart, supra, Miller v. Crawford, 70 Ohio St. 207, 71 N. E. 631, and Block v. Schwartz, 27 Utah, 387, 76 Pac. 22, 65 L. R. A. 308, 101 Am. St. Rep. 971. On the other hand, similar statutes have been held valid in

Massachusetts, Tennessee, and Washington. Squire & Co. v. Tellier, 185 Mass. 18, 69 N. E. 312, 102 Am. St. Rep. 322; Neas v. Borches, 109 Tenn. 398, 71 S. W. 50, 97 Am. St. Rep. 851; McDaniels v. Connelly Shoe Co., 30 Wash. 549, 71 Pac. 37, 60 L. R. A. 947, 94 Am. St. Rep. 889. The Massachusetts and Tennessee laws both require the full detailed inventory to be made showing the cost price of each article, that the seller shall give the purchaser a complete list of his creditors, and that the purchaser shall notify the creditors personally or by registered mail of the sale and the terms thereof. The Massachusetts act provides that, if its requirements are not complied with, the sale shall be void. The Tennessee act provides that the sale in that event "shall be presumed to be fraudulent and void" as against creditors. The Washington statute requires that the vendor shall furnish the vendee with a verified list of his creditors and the amounts due them, and that unless the vendee pays the creditors appearing upon this list, or sees to it that the purchase money is applied to the payment of their claims, the sale shall be fraudulent and void. It will be observed that the Massachusetts and Tennessee statutes, which have been upheld, have substantially the same requirements as the New York, Ohio, and Utah acts, which have been declared unconstitutional.

The cases do not differ widely in the enunciation of the principles to be applied in determining the constitutionality of these acts. The power of the Legislature to adopt reasonable regulations restricting the transfer of property to prevent fraud is conceded in each case. Taking substantially the same regulations, the one line of cases holds that they are reasonable restrictions upon the right of a person to transfer his property, and the other that they are so unreasonable as to constitute in effect a taking of property without due process of law. The arguments in support of each position are stated exhaustively in the majority and minority opinions, respectively, in the case of Wright v. Hart. It would serve no good purpose to review that discussion, and the referee doubts his ability to add thereto. It seems to me, however, that the Connecticut act differs radically from all of those which have been referred to herein. It has hardly a feature in common, for instance, with the New York statute, save that they both treat of the same subject-matter. The New York act requires a full detailed inventory to be made by the seller and buyer together, giving the cost price of each article. The purchaser must make explicit inquiry of the seller as to names and addresses of all his creditors and the amount due each, and obtain a written answer to such inquiry, which answer and the inventory must be retained by him at least six months. The purchaser must also at least five days before the sale notify each creditor personally or by registered letter of the proposed sale, the cost price of the merchandise to be sold, and the price to be paid therefor. It is obvious that in the case of the sale of a large department store, as instanced by counsel, these restrictions might well be prohibitive of the sale. Contrast the simple requirements of the Connecticut act. No duty whatever is laid upon the purchaser. The only requirement of the seller is that not less than 7, nor more than 30, days before the sale he shall file in the town clerk's office a notice describing in general terms the property to be sold, and the conditions of the sale, and the parties thereto. This may be a paper of a dozen lines or less, in the preparation of which no technical skill is needed. No information is demanded which the seller has not at hand nor any the publication of which would prevent the sale. The act is, as was said of its predecessor in Walp v. Mooar, "of the same general character as our laws requiring assignments of future earnings and conditional sales to be recorded," with this exception—that the notice must be recorded seven days prior to the sale, instead of afterwards. It is true that this is a radical change obviously required if the act were to be effective. The recording of the notice after the sale had been made, the title passed, and the goods perhaps shipped out of the state, was very much like locking the stable door after the horse was stolen. The amendment of the act makes it effective to prevent fraud. Does it at the same time make it unconstitutional? It undoubtedly does interfere with one's ability to transfer his property without paying his debts. If the

vendor pays his debts, he can sell without regard to the statute. The statute, without placing any burdensome duties upon either vendor or vendee, in effect gives the creditors of the former a reasonable opportunity to secure the payment of their claim out of the property of their debtor before he can place it beyond their reach. The statute does prevent an immediate transfer of the property of this kind unless the seller can satisfy the purchaser that all his creditors will be paid. Such sales are not in the ordinary course of business, and would usually be made only after the taking of an inventory and with no necessity of an immediate consummation. Cases can be imagined, however, where even this restriction might prove a hardship. Does the act upon the whole so promote the general welfare as to justify the restriction upon the individual? The extent of the evil resulting from these sales of stock in bulk is a matter of common knowledge. The facts in the case at bar disclose a transaction typical of this class.

The bankruptcy schedules disclose that Paulis owed upwards of $6,700. His only assets consisted of the stock of merchandise which he sold to claimants for $1,300, although, as Hauft testified, he first asked $2,000, which is probably about what it was worth. Claimants came up from New York, and, though they had not seen the stock before and knew nothing about it, in an hour and a half they had made their bargain with Paulis, bought the stock, and paid for it with two $500 bills and three $100 bills. As soon as he received the money, Mr. Paulis disappeared, and has not been heard of since, though his presence has been earnestly desired by his creditors in these bankruptcy proceedings. Claimants at once proceeded to get packing cases and a truck, and when the sheriff came about three hours later had part of the stock already packed and on the truck ready to be taken to the station and shipped to New York. The vendor, with liabilities more than thrice his assets, sells his entire stock without inventory and at a large discount for cash, and at once disappears with the proceeds. There is no question of the fraudulent character of the transaction so far as he is concerned. The vendees say that they inquired of Paulis if he had any creditors and he told them that he owed nothing. A delay, not of seven days, but of a few hours, would have brought convincing proof to the contrary in the appearance of the sheriff. It would not in such a case seem unreasonable to require of the purchaser something more than the acceptance of the inherently improbable statement of the vendor that he owes nothing. Creditors are in fact defrauded, but the fraudulent intent can rarely be brought home to the purchaser, who, in the absence of the statute, could buy without investigation and in absolute disregard of the existence of creditors.

The mere statement of these facts indicates the desirability of some legislation to prevent a fraud so easily perpetrated. That adopted by most of the states has, as it seems to me, gone to the limit of the constitutional power of the Legislature, if, indeed, it has not transcended it. On the contrary, the Connecticut Legislature has wisely avoided the drastic features of these acts and enacted a statute calculated to suppress the evil to be remedied with the least possible interference with the right of the individual to dispose of his property. The subject-matter of the act is clearly within the province of the Legislature, and the act itself is a reasonable regulation of the sale of merchandise so as to prevent fraud, and must, therefore, be upheld by the courts.

The demurrer is overruled, and the petition dismissed. Claimants may file a petition for review and certificate of facts thereon within 10 days.

Hurlbutt & Davis and E. H. Rogers, for claimants.
Shaw & Nicholson, for trustee.

PLATT, District Judge. In the last analysis our answer depends upon whether the Connecticut statute (chapter 211, p. 408, Pub. Acts 1905), which is an attempt to remedy an acknowledged wrong, is more drastic than it should be in the effect which it must have upon honest retail dealers. As Mr. Justice Werner puts it, in the case of the New York statute touching on the same subject, whether the law-

making power has "practically" placed "an embargo upon all sales of merchandise in bulk under the guise of a statute ostensibly designed to prevent frauds in such sales." Our statute does not strike me as being such a practical embargo.

The court extends cordial thanks to Referee Banks for the pains which he has taken in this matter, and for his well-conceived, exhaustive, and comprehensive discussion thereupon. Let his memorandum go herewith and serve as a more elaborate expression of my views.

The decision of the referee is affirmed.